**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

| | |
|---|---|
| **TOMMY WHITE** | **PLAINTIFF** |
| **VS.** | **CIVIL ACTION NO. 2:07cv305-MTP** |
| **RONALD KING**, *et al.* | **DEFENDANTS** |

## OPINION AND ORDER

THIS MATTER is before the court on the Defendants' Motion for Summary Judgment [35] and the Plaintiff's Response and Cross-Motion for Summary Judgment [39]. The court, having considered the submissions of the parties and the applicable law, finds that the Motions should be DENIED.

## FACTUAL BACKGROUND

Plaintiff, Tommy White, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on November 14, 2007, against the following Defendants: Mississippi Department of Corrections ("MDOC"), South Mississippi Correctional Institution ("SMCI"), Ronald King, Christopher Epps, and James Johnson. Defendants MDOC and SMCI were dismissed by Order [10] dated January 18, 2008. Defendant James Johnson, now deceased, was never served with process and is not before the court.

The Plaintiff is currently incarcerated in the Marshall County Correctional Facility ("MCCF") in Holly Springs, Mississippi, after having been convicted of aggravated assault in Yazoo County in April 2006. Plaintiff's claims arose while he was incarcerated in SMCI.[1]

---

[1] Plaintiff was housed in SMCI for approximately twenty months, September 17, 2006 until May 15, 2008. *See* Notice of Change of Address [43].

Through his complaint and as clarified during his *Spears*[2] hearing, Plaintiff claims that Defendants violated the Eighth Amendment by failing to enforce the MDOC Policy to provide a smoke-free environment for inmates inside the facility units, and by failing to abide by the Mississippi Clean Indoor Air Act ("MCIAA"). Plaintiff alleges that due to the Defendants' actions, he is exposed to unreasonable levels of second-hand tobacco smoke (hereinafter "ETS"),[3] which has caused and/or exacerbated his health problems.

Plaintiff seeks injunctive relief (designating one building or zone at SMCI as smoke-free or moving him to a non-smoking facility) as well as compensatory damages.

On April 22, 2008, Defendants filed their Motion for Summary Judgment [35]. Plaintiff filed his Response and Cross-Motion for Summary Judgment [39] on May 9, 2008. In Defendants' Motion, they claim that Plaintiff has failed to allege an unreasonable risk to his health from exposure to unreasonably high levels of ETS, and thus, has failed to demonstrate an Eighth Amendment violation. Defendants further claim that Plaintiff has failed to demonstrate that his exposure to ETS created a risk of harm "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *See* Memorandum [36] at ¶ 6. In support of their Motion [35], Defendants submitted the affidavits of Superintendent Ronald King and Dr. Ron Woodall, SMCI Medical Director.

In Plaintiff's Response and Cross-Motion [39], he alleges he suffers from coronary artery

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on April 1, 2008. Plaintiff's claims and allegations made at his *Spears* hearing supersede the claims alleged in his complaint. *See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).

[3]Environmental Tobacco Smoke.

disease and has a coronary stent implanted due to his involuntary exposure to ETS.[4] He further claims he suffers with asthma, chest pain and breathing trouble everyday, and is at serious risk of future health problems due to Defendants' unwillingness to adhere to the MCIAA[5] and MDOC Policy 25-05-F.[6] He claims he was housed with smokers for twenty months at SMCI, and that 95% of the inmates he was housed with smoked.

Plaintiff claims that Defendants knew of the risk of serious harm caused by ETS, as evidenced by the passage of MDOC Policy 25-05-F and the MCIAA. He claims that after the passage of the MCIAA in July 2006, Defendants immediately posted no-smoking signs in the administration buildings at SMCI, but continued to allow smoking in the housing units, exposing non-smokers to ETS twenty-three hours a day. He claims this constitutes deliberate indifference. Defendants did not file a reply or rebuttal in response to Plaintiff's Motion [39].

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the non-movant, the movant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the movant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that

---

[4] During his *Spears* hearing, Plaintiff testified that he does not have a history of any of the potential causes for coronary artery disease, except for his involuntary exposure to ETS.

[5] The Mississippi Clean Indoor Air Act (House Bill 123) generally prohibits smoking inside government buildings. *See* Miss. Code Ann. § 29-5-161; Ex. [3-2] at 2-3.

[6] MDOC Policy 25-05-F provides that the MDOC shall provide a "smoke-free environment for inmates inside the facility units." *See* [3-2] at 1.

this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

4

In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court established a two-prong test to determine whether a claim for exposure to ETS violates the Eighth Amendment. First, Plaintiff must show that he was exposed to unreasonably high levels of ETS. *Helling*, 509 U.S. at 35. Second, he must show that the prison officials acted with deliberate indifference to his situation. *Id.* This test involves both objective and subjective components. *Id.*

With respect to the first prong, Plaintiff must objectively "show that he himself is being exposed to unreasonably high levels of ETS." *Id.* Establishing the objective factor "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36. "[S]poradic and fleeting exposure" to ETS does not constitute "unreasonably high levels," even if it is "unwelcome and unpleasant" and causes Plaintiff discomfort, such as nausea and coughing. *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.

For the second prong, Plaintiff must show that the prison officials were subjectively deliberately indifferent to his situation. *Id; see also Richardson*, 260 F.3d at 498; *Callicutt v. Anderson*, 48 Fed. Appx. 916, 2002 WL 31114947, at *1 (5th Cir. Sept. 11, 2002) (stating that in order to succeed on an Eighth Amendment claim, plaintiff must show that he is exposed to unreasonably high levels of ETS and that the prison officials demonstrated deliberate indifference to his situation). In order to demonstrate deliberate indifference, Plaintiff must show that Defendants acted with "obduracy and wantonness, not inadvertence or error in good

faith." *Callicutt*, 2002 WL 31114947, at *2 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the realities of prison administration.'" *Id.* (citing *Helling*, 509 U.S. at 36-37).

The Fifth Circuit recently issued two opinions, though unpublished, holding that fact issues precluded summary judgment in favor of defendants on the inmate's claims for exposure to excessive levels of ETS.[7] *See Murrell v. Chandler*, No. 07-40340, 2008 WL 1924198 (5th Cir. Apr. 30, 2008); *Murrell v. Casterline*, No. 07-30153, 2008 WL 822237 (5th Cir. March 25, 2008).[8] In *Chandler*, the Fifth Circuit reversed the district court's grant of summary judgment in favor of the defendants on the prisoner's ETS claim. *Chandler*, 2008 WL 1924198, at *1. The court found that the prisoner's sworn affidavit included the following competent summary judgment evidence:

> he was assigned to a non-smoking unit but smokers were housed at the same unit; he was exposed to excessive levels of ETS 12 to 24 hours a day in his housing unit and at the factory where he worked; the smoke was often so thick in his housing unit that he had to hold a wet towel over his face to breathe; he advised the defendants that the no smoking policy was not being enforced and that he was having serious health problems that included migraine headaches and respiratory problems.

---

[7]The Fifth Circuit also recently issued an unpublished opinion vacating the decision by the U.S. District Court for the Northern District of Mississippi dismissing an inmate's ETS claim pursuant to 28 U.S.C. § 1915(e). *See Marcus v. Epps,* No. 07-50568, 2008 WL 2048331 (5th Cir. May 14, 2008). In *Marcus*, the plaintiff alleged he was exposed to ETS, he was injured as a result of the exposure, and that the defendants knew of and disregarded this risk to his health. *Marcus*, 2008 WL 2048331, at *1. The Fifth Circuit held, "Although inartful, [plaintiff's] complaint does not fail to allege sufficient facts to state a facially plausible claim for relief at this juncture, although the ultimate viability of [his] claim is dubious." *Id.*

[8]These cases involve the same plaintiff, Getzell Johnson Murrell, relating to claims of ETS exposure while he was incarcerated in two different prisons.

*Id*. at *2. The court held, "This evidence creates genuine issues of material fact regarding whether Murrell objectively proved that he was exposed to unreasonably high levels of ETS and whether the defendants were subjectively deliberately indifferent to his plight." *Id*.

Likewise, in *Casterline*, the Fifth Circuit vacated the district court's grant of summary judgment in favor of the defendants on the prisoner's ETS claim. *Casterline*, 2008 WL 822237, at *1. The magistrate judge in the underlying case took judicial notice of the June 2006 Surgeon General's report concluding that there is no safe level of exposure to ETS, and concluded that the plaintiff met the first prong of *Helling*; defendants did not appeal this holding. *Id.* In concluding that the district court erred in holding that the plaintiff failed to meet the second prong of the *Helling* test, the Fifth Circuit held that the plaintiff established genuine issues of material fact as to whether the defendants were subjectively deliberately indifferent to his situation. *Id.* at *2. In its holding, the Fifth Circuit relied on evidence presented by the plaintiff that the defendants knew that he was allergic to ETS, that he specifically asked the defendants to enforce the no-smoking policy, and that the defendants failed to enforce the policy. *Id.* The court also considered sworn statements of other inmates submitted by the plaintiff indicating that defendants did not enforce the policy. *Id.*

Based on the record and the recent holdings by the Fifth Circuit, the court concludes that genuine issues of material fact exist as to whether Plaintiff has objectively demonstrated "that he himself is being exposed to unreasonably high levels of ETS." *Helling*, 509 U.S. at 35; *see also Wilson v. Stalder*, 70 F.3d 1268, 1995 WL 696718, at *4 (5th Cir. Oct. 19, 1995) (reversing district court's grant of summary judgment in favor of defendants on plaintiff's ETS claim based on existence of genuine issues of material fact). Plaintiff claims that 95% of the 100 inmates

7

housed with him at SMCI smoked, and that he was unwillingly exposed to ETS 23 hours a day.[9]

Plaintiff's sworn submissions reflect that he has asthma, has had several heart attacks, and has a stent implant due to coronary artery disease. *See* Affidavit [39-2]. He also claims that he suffers from coughing, sneezing, and eye irritation, and has trouble breathing. *See* Motion [39] at 3; Affidavit [39-2]. Plaintiff alleges that these problems were caused by his unwilling exposure to ETS at SMCI. Plaintiff claims that because of his exposure to ETS, he will have to take medication for the rest of his life.

Defendants submitted the affidavit of Ronald King, which states that SMCI abides by MDOC Policy DOC-20-10, which provides that the MDOC shall designate smoking areas for its offenders, if appropriate. *See* Affidavit [35-2]. His affidavit states that Plaintiff's zone has a designated smoking area in the day-room section at the front of the zone. *See* Affidavit [35-2]. Mr. King states that offenders are not allowed to smoke in the sleeping areas, and that two exhaust fans are located at the rear of the zone which circulate the air, and that two ceiling vents are located directly above the day-room area. It further states that any violation of Policy DOC-20-10 shall be addressed through the MDOC offender disciplinary process. *Id.* However, Mr. King's affidavit does not specifically address how or whether the policy is enforced or how inmates or MDOC staff are reprimanded for violating the policy. His affidavit also does not address MDOC Policy 25-05-F, which prohibits smoking inside MDOC facilities.

Plaintiff disputes the statements made in Ron King's affidavit. Specifically, he claims that because his sleeping unit is in an open bay area where inmates are allowed to smoke, he cannot get away from the ETS. He further states that there are no signs prohibiting smoking in

---

[9]As previously stated, Plaintiff is now housed at MCCF.

his housing area.[10] He also claims that the two exhaust fans at the back of the zone pull smoke through the entire open bay. He claims that he has complained about the smoking and the inadequate ventilating system in his unit, and that the ventilation fans are turned off 85% of the time in the winter.

Contrary to Mr. King's affidavit, Plaintiff claims he has discussed this problem several times with Case Manager Erin Bounds. Ms. Bounds allegedly agreed with Plaintiff that SMCI needs to create a smoke-free building. He claims he has also made his ETS complaints known to the administration through the Administrative Remedy Program ("ARP"). However, pursuant to Plaintiff's affidavit and his testimony given at his *Spears* hearing, inmates and MDOC staff smoke throughout the entire unit. *See* Affidavit [39-2]. Further, in his Motion [39], he claims that because the ETS hovers and travels, there is no way to get away from the ETS.

Defendants also submitted the affidavit of Dr. Ron Woodall, the Medical Director at SMCI. Dr. Woodall states that he has reviewed Plaintiff's medical file, and notes that Plaintiff has a history of asthma and hypertension, and is on several medications. *See* Affidavit [35-3]. He further states that Plaintiff is on Zocor for "treatment of hyperlipidemia[11] and a risk factor for coronary artery disease." *Id.* On July 20, 2007, Plaintiff was seen for treatment of chest wall pain; his chest x-ray showed a nodular density of left cardiac border. He was prescribed Qvar and Albuterol inhalers and followed in the asthma clinic. A repeat chest x-ray on September 12,

---

[10]However, in his affidavit, Plaintiff states that on May 6, 2008, a security officer at SMCI placed a "no smoking" sign on the wall that separates the sleeping areas. *See* Affidavit [39-2] at ¶ 13.

[11]"Hyperlipidemia is an elevation of lipids (fats) in the bloodstream. These lipids include cholesterol, cholesterol esters (compounds), phospholipids and triglycerides." *See* http://www.americanheart.org/presenter.jhtml?identifier=4600.

2007, showed lingular fibrosis. *Id.* Dr. Woodall further noted that on December 27, 2007, Plaintiff was sent to the emergency room "with EKG and enzyme changes of myocardial injury undergoing stent placement for coronary artery disease." *Id.* at ¶ 10. Dr. Woodall states that in his opinion, "the level of smoke in Plaintiff's living area does not pose unreasonable risk of serious damage to future health" and that "[Plaintiff's] exposure does not create a risk of harm violating contemporary standards of decency." *See* Affidavit [35-3].[12]

Plaintiff disagrees with some of the statements made in Dr. Woodall's affidavit. He claims that although he suffered with asthma as a child, he had not had an asthma attack for thirty-four years until his exposure to ETS at SMCI, which aggravated his chronic asthma. He also disagrees with Dr. Woodall's statements that Plaintiff has a history of hypertension and has no allergies. Plaintiff disagrees with Dr. Woodall's statement that Plaintiff's sleeping area is smoke-free and that he controls his access to smoking areas. Plaintiff alleges that Dr. Woodall has never been inside his housing unit as long as he has been housed there.

It is undisputed that Plaintiff was treated for asthma and coronary artery disease while at SMCI. While the summary judgment evidence submitted by Plaintiff does not establish that these conditions were caused by his exposure to unreasonably high levels of ETS, his sworn pleadings, affidavit, and *Spears* testimony create a genuine issue of material fact. Further, the Eighth Amendment's proscription against deliberate indifference applies not only to current health problems, but also to the risk of future health problems. *See Helling*, 509 U.S. at 33-35; *see also Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Helling*, 509 U.S. at 33-

---

[12]Dr. Woodall's affidavit is silent as to his opinion on whether Plaintiff's medical conditions were caused or exacerbated by his exposure to ETS.

35) (stating that "an inmate may obtain injunctive relief under § 1983 based on exposure to environmental tobacco smoke in the absence of a present physical injury"). Although Plaintiff has since been transferred from SMCI, his claims for injunctive relief may not be moot if he can show that the alleged constitutional violation is capable of repetition (i.e., either at his new facility or if he is transferred back to SMCI).[13] *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

There are also genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's situation. *See Helling*, 509 U.S. at 35-36. Defendants allege that they had "no personal involvement except promulgation of policies and rules." Motion [35] at 1. However, Plaintiff alleges that Defendants knew of the serious risk of harm caused by ETS, as evidenced by the enactment of MDOC Policy 25-05-F, which prohibits smoking inside MDOC facilities, which was signed by Defendant Christopher Epps. *See* Policy [3-2] at 1. Plaintiff claims that Defendants knew inmates were smoking indoors in violation of this policy, yet did nothing to stop it. He claims that after the enactment of the MCIAA, Defendants only banned smoking in the administration buildings and continued to allow inmates to smoke in the housing areas.

Plaintiff alleges that Defendants were also aware that the smoking policy was not being enforced through the numerous ARP grievances filed by Plaintiff and other inmates complaining of ETS. Plaintiff's ARP Second Step Response Form was signed by Defendant Ronald King, and his Third Step Response Form was signed by Defendant Christopher Epps. *See* Forms [3-3]

---

[13]In his Change of Address [54] filed on September 12, 2008, Plaintiff claims that MCCF is not a smoke-free facility.

at 9; [6] at 3. While Defendants' involvement in the ARP alone may be insufficient to establish liability for a constitutional violation, based on the record, there are genuine issues of material fact as to whether Defendants were personally involved in the alleged constitutional deprivation and/or whether there was a "sufficient causal connection between the supervisor's [alleged] wrongful conduct and the [alleged] constitutional violation." *Thompkins*, 828 F.2d at 304.

Based on the evidence before the court, there are genuine issues of material fact as to whether Plaintiff was exposed to unreasonably high levels of ETS, and whether Defendants acted with deliberate indifference to his situation in violation of the Eighth Amendment. *See Helling*, 509 U.S. at 35.[14]

To the extent Plaintiff's Motion [39] seeks judgment as a matter of law on his claims that Defendants violated the MCIAA (House Bill 123) and MDOC Policy 25-05-F, he has failed to demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.[15]

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [35] be DENIED, and that Plaintiff's Cross-Motion for Summary Judgment [39] be DENIED.

---

[14]Plaintiff should understand that this conclusion does not reflect any opinion of this court that the claims contained in the complaint will or will not ultimately be determined to be meritorious. Rather, in reaching this conclusion, the court merely concludes that genuine issues of material fact exist as to Plaintiff's claims.

[15]The Defendants did not address these claims in their Motion [35].

SO ORDERED this the 16th day of December, 2008.

                                                  s/ Michael T. Parker
                                                  United States Magistrate Judge